## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JIMMY LEE WILSON, SR.,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 23-CV-0909** |
| | : | |
| **BUCKS COUNTY** | : | |
| **CORRECTIONAL FACILITY,** *et al.*, | : | |
| *Defendants* | : | |

## M E M O R A N D U M

NITZA I. QUIÑONES ALEJANDRO, J.                                                APRIL 6, 2023

      Plaintiff Jimmy Lee Wilson, Sr., an inmate currently confined at Bucks County Correctional Facility ("BCCF"), filed this *pro se* action alleging violations of his civil rights. Wilson also seeks leave to proceed *in forma pauperis*. Named as Defendants are: (1) BCCF; (2) Warden Matelis; (3) Ms. Reed, Deputy Warden, (4) Captain Nottingham; (5) Corrections Officer Bunda; and (6) Lieutenant Manda. For the reasons set forth below, the Court will grant Wilson leave to proceed *in forma pauperis* and permit him to proceed on his excessive force and related state law claims against *only* Defendant Bunda. Wilson's claims against the other Defendants will be dismissed, *in part,* with prejudice and, *in part*, without prejudice. Wilson will be granted the option of proceeding only on those claims that pass statutory screening, or filing an amended complaint.

## I.      FACTUAL ALLEGATIONS[1]

Wilson, who is a convicted and sentenced county prisoner, alleges that his Eighth Amendment rights were violated while an inmate at BCCF.  (ECF No. 2 at 3-4.)  On January 23, 2023, Wilson informed Lieutenant Manda that he had a conflict with another inmate who also was housed on H-module.  (ECF No. 3 at 1.)  Because Wilson would soon be eligible for parole, he requested a separation.  (*Id.*)  As a result, Wilson was transferred to D-module.  (*Id.*)

Wilson claims that on the morning of January 24, 2023, in the D-module dayroom, he was assaulted by C.O. Bunda when C.O. Bunda "grabbed" Wilson three times as Wilson attempted to get water to take medication.  (*See* ECF No. 2 at 5, ECF No. 3 at 1.)  Wilson alleges that C.O. Bunda asked Wilson if he was going to take his medication, then opened Wilson's cell door so that Wilson could get the medication from the nurse.  (ECF No. 3 at 1.)  Wilson contends that when he began to walk to the water fountain, C.O. Bunda grabbed Wilson and told him to go back into his cell.  (*Id.*)  Wilson told C.O. Bunda not to put his hands on him and informed C.O. Bunda that he was getting water for his medication.  (*Id.*)  Wilson alleges that C.O. Bunda put his hands on Wilson a second time, informing Wilson that he was "adm. lock" and should not be out of his cell. (*Id.*)  Wilson claims that he told C.O. Bunda that he was not "adm. lock and quit putting your hands on me." (*Id.*)  According to Wilson, C.O. Bunda put his hands on Wilson a third time, "then C.O. Bunda and C.O. Fabiani grab me then C.O. Bunda pulled the pen, then C.O. Bunda and C.O. Fabiani slammed me to the concrete floor and twisted my left arm to where I felt a lot of pain in my hand and shoulder." (*Id.*)  It appears that Wilson is claiming that C.O. Bunda twisted his arm until Wilson felt pain in his left shoulder.  (*See* ECF No. 2 at 5, ECF No. 3 at 1.)  Wilson was

---

[1]      The allegations set forth in this Memorandum are taken from Wilson's Complaint and Exhibits, which the Court construes together as the Complaint.  (*See* ECF Nos. 2 and 3.)  The Court adopts the pagination supplied by the CM/ECF docketing system.

charged with a misconduct by C.O. Bunda for the incident and placed in the RHU for fifteen days. (ECF No. 3 at 1.)

Wilson was taken to the dispensary and a P.A. ordered x-rays of his hand and shoulder. (*Id.* at 2.) When the x-rays were taken on January 26, 2023, Wilson was informed that he would be taken out of the prison for further medical evaluation because the x-rays revealed some sort of injury. (*Id.*) Wilson submitted requests for sick call slips on January 27, February 1, and February 2, because he continued to experience severe pain in his shoulder and neck which prevented sleep. (*Id.* at 2-3.) Wilson asserts that he received no response to these requests. It appears that after the x-rays were taken on January 26, he was not seen again by the medical staff until February 3, when he was taken to the dispensary for further evaluation and was given Tylenol for the pain. (*Id.* at 3.) Wilson again was told that he would be taken out of the prison for further evaluation, but was not informed when it would occur due to security concerns. (*Id.*)

On February 7, Wilson submitted another sick call slip requesting additional medication because he was in constant pain and unable to sleep as a result. (*Id.*) Less than an hour later, Wilson was taken to St. Luke's Hospital for an evaluation by "the bone doctor." (*Id.* at 4.) The doctor "suggested physical therapy and ice" and indicated that he would reevaluate Wilson thirty days later. (*Id.*) Upon his return to BCCF on February 7, Wilson remained in constant pain and sought to inform the P.A. that he wanted a second opinion. (*Id.*) Wilson seeks monetary relief for his claims. (*See* ECF No. 2 at 5.)

## II.   STANDARD OF REVIEW

Because it appears that Wilson is incapable of paying the fees to commence this civil action, he will be granted leave to proceed *in forma pauperis*.[2]   Accordingly, 28 U.S.C. §

---

[2]      However, as Wilson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

1915(e)(2)(B)(ii) applies, and requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Rule 12(b)(6) requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Wilson is proceeding *pro se*, his allegations are construed liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

## III.  DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and/or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged

4

constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).  Liberally construing Wilson's Complaint as this Court must, the Court understands Wilson to present claims for excessive force and related state law claims, and a deliberate indifference to medical needs.

### A.   Excessive Force and State Law Assault and Battery Claims Against C.O. Bunda

Wilson claims that he was assaulted three times by C.O. Bunda on the morning of January 24, 2023, in the D-module dayroom when Wilson attempted to get water from the water fountain to take his medication.  (ECF No. 2 at 4-5, ECF No. 3 at 1-2.)  The Court understands Wilson's Complaint as one alleging assault and battery and the use excessive force, by Defendant Bunda based on the events of January 24, 2023.

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  When screening an Eighth Amendment excessive force claim under section 1915, the court asks whether the prisoner has plausibly alleged that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." *Jackson v. Bueno*, No. 20-687, 2020 WL 2847925, at *3 (E.D. Pa. June 2, 2020) (quoting *Hudson*, 503 U.S. at 7).  The factors used to determine whether the force applied was excessive include:  (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the

basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Taking Wilson's allegations as true, as the Court is obligated to do at this stage of the litigation, Wilson has alleged a sufficient basis from which the Court could infer that C.O. Bunda used excessive force on Wilson on January 24, 2023.  Accordingly, Wilson will be permitted to proceed on his excessive force claim against C.O. Bunda.

The Court understands the Complaint to also invoke this Court's supplemental jurisdiction to raise state law tort claims for assault and battery related to the January 24, 2023 incident. "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person).  "A corrections officer and police officers may use necessary force in the performance of their duties." *Abreu v. SCI Greene State Corr. Inst.*, No. 23-1092, 2023 WL 2772136, at *4 (E.D. Pa. Apr. 4, 2023) (citations omitted).  "It is the reasonableness of such force used that determines whether the officer's conduct constitutes an assault and battery." *Id.* (citing *Renk*, 641 A.2d at 293).  The allegations supporting these state law claims are the same as those supporting Wilson's excessive force claims; therefore, the Court declines to dismiss these claims, at this stage of the litigation. *See Short v. Webb*, No. 18-4130, 2019 WL 4573254, at *5 (E.D. Pa. Sept. 20, 2019) (declining to dismiss state law claims of assault, battery, and intentional infliction of mental distress as such claims were based on the same allegations that supported the excessive force claim which was

permitted to proceed).  Accordingly, the Court will also allow Wilson's state law claims of assault and battery based on the January 24, 2023 incident to proceed.

### B.      Claims Against BCCF

Among the Defendants named in this action is BCCF, the jail where the events giving rise to Wilson's claims took place,.  However, a jail is not a "person" subject to liability under § 1983. *See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010).  Accordingly, the any claims against BCCF are dismissed, with prejudice.

### C.      Claims Against Warden Matelis, Deputy Warden Reed, and Captain Nottingham

Wilson utilized a form Complaint to present his claims and checked the boxes to indicate that his claims against Warden Matelis, Deputy Warden Reed, and Captain Nottingham are being brought in their official capacities.  Official capacity claims are indistinguishable from claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To plead a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell v.*

Case 2:23-cv-00909-NIQA   Document 8   Filed 04/07/23   Page 8 of 13

*Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)), *cert. denied*, 140 S. Ct. (2019).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury."  *Id.* (internal quotations and alterations omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker."  *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").[3]

To the extent Wilson seeks damages from Warden Matelis, Deputy Warden Reed, or Captain Nottingham in their official capacities, he has failed to allege facts that support a *Monell* liability.  Wilson has not pled a municipal policy or custom with respect to any of the alleged

---

[3]     A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Id.*

constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference. Accordingly, the official capacity claims against Defendants Matelis, Reed and Nottingham are not plausible and will be dismissed without prejudice.

Wilson did not check the box on the form complaint to indicate that he sought to present his claims against Warden Matelis, Deputy Warden Reed, and Captain Nottingham in their individual capacities. (*See* ECF No. 2 at 2.) Liberally construing the Complaint, the Court considers whether Wilson intended to bring claims against these Defendants in their individual capacities. Wilson presents no factual allegations concerning these Defendants and thus, does not clearly state the basis for a claim against any of these Defendants. To the extent that Wilson seeks to bring a claim against Warden Matelis, Deputy Warden Reed, or Captain Nottingham for holding a supervisory position, Wilson has not alleged a plausible claim.

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Here, Wilson has failed to allege that any of Warden Matelis, Deputy Warden Reed, or Captain Nottingham established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, and has also failed to allege the personal involvement of Warden Matelis, Deputy Warden Reed, or Captain Nottingham, if any, in any alleged underlying constitutional violation. Accordingly, any individual capacity claims against Warden Matelis, Deputy Warden Reed, and Captain Nottingham are not plausible and are dismissed, without prejudice.

### D. Claims Against Lieutenant Manda

It appears that Wilson discussed Lieutenant Manda's actions in the Complaint solely for the purpose of explaining that Wilson was transferred from H-module to D-module on or about January 23 or 24, 2023, after Wilson requested a separation from another inmate so as not to jeopardize Wilson's eligibility for parole. (*See* ECF No. 3 at 1.) To the extent that Wilson intended to name Lieutenant Manda as a Defendant in this case, Wilson makes no allegation that Lieutenant Manda violated his constitutional rights. *Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.). Because Wilson does not clearly state the basis for a constitutional claim against Lieutenant Manda, any claims against Lieutenant Manda are dismissed, without prejudice.

### E. Deliberate Indifference to Medical Needs

The Complaint sets forth a chronology of the treatment Wilson received, and the sick call slips and requests that Wilson made to receive treatment, in the days following the incident in the dayroom on January 24, 2023. (*See* ECF No. 3 at 1-4.) Based on the foregoing, the Court

understands Wilson to allege that his Eighth Amendment rights were violated in connection with the treatment or lack thereof, for his alleged shoulder injury.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (Deliberate indifference can be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.") (internal citations and quotations omitted).  Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious."  *Id.*  Allegations of medical malpractice and mere disagreement regarding proper medical treatment, however, are insufficient to establish a constitutional violation.  *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  Additionally, "absent a reason to believe (or actual knowledge) that prison doctors or their

assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Id.* at 236.

Here, the allegations in Wilson's Complaint do not support a plausible Eighth Amendment claim under the *Iqbal* pleading standard. Wilson's allegations concerning deliberate indifference to his medical needs are undeveloped. He alleges that he failed to receive medical care after it was requested; however, he has not tied his allegations to an individual defendant. As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207. Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). Because Wilson has not identified an individual or individuals who is alleged to have intentionally denied or delayed access to medical care, or who intentionally interfered with prescribed treatment, Wilson's allegations as currently pled are insufficient to state a constitutional claim. Accordingly, Wilson's deliberate indifference to medical needs claims will be dismissed without prejudice.

## IV.     CONCLUSION

For the reasons set forth, Wilson's claims for excessive force and assault and battery against C.O. Bunda pass statutory screening. Wilson's § 1983 claims against BCCF, however, are dismissed, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible. Further, the Court concludes that amendment of these claims against BCCF would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district

courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").

Additionally, the following claims are dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim; *to wit*:

- official and individual capacity claims against Warden Matelis, Deputy Warden Reed, and Captain Nottingham; claims against Lieutenant Manda; and

- deliberate indifference to medical needs claims.

Because the Court cannot say at this time that Wilson is unable to cure the defects in the claims that have been dismissed without prejudice, and considering Wilson's *pro se* status, he is granted the option of filing an amended complaint to attempt to cure the defects in those claims. In the alternative, Wilson may advise the Court that he seeks to proceed only on the claims that pass statutory screening.

To the extent that Wilson's March 22, 2023 letter (ECF No. 6) can be construed as a request to appoint counsel, such request is denied, without prejudice, at this time as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).

An appropriate Order follows.


*NITZA I. QUIÑONES ALEJANDRO, J*